## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## PADUCAH

| | | |
|---|---|---|
| GABRIEL MICHELLE DUNLAP, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | Case No. 5:20-cv-00159 (TBR) |
| CHOICE HOTELS INTERNATIONAL, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Sleep Inn and Suites' Motion to Exclude the Opinions and Report of Plaintiff's Expert Fred Del Marva, (Mot. to Exclude), Dkt. 70. Plaintiff Gabriel Dunlap has responded, (Resp.), Dkt. 74. Sleep Inn has replied, (Reply), Dkt. 75. As such, briefing is complete and this motion is ripe for adjudication.

For the following reasons, Sleep Inn's Mot. to Exclude, Dkt. 70, is **GRANTED**.

### I.    FACTUAL BACKGROUND

According to the Complaint, Gabriel Dunlap and her boyfriend checked into the Sleep Inn and Suites on December 14, 2018. *See* Amended Complaint, (Am. Compl.), Dkt. 41, ¶ 11. Dunlap maintains that she and her boyfriend had a "relatively uneventful" stay and that their room was in "good condition" when they checked out on December 16, 2018. *See id.* ¶¶ 12–14.

However, later on December 16, 2018, a housekeeper claims to have entered Dunlap's room and observed physical damage to the room, saw what appeared to be drug residue and paraphernalia in the room, and noticed that some of the linens were missing. *See* Irvin Aff., Dkt. 70-2, ¶¶ 3–7. That housekeeper notified her manager, who in turn notified law enforcement. *See id.* ¶¶ 11–12. Craig Young, an officer with the Oak Grove Police Department, responded and

1

issued Dunlap a citation and put out a warrant for her arrest. *See* Am. Compl. ¶ 23; *see also* Young Dep., Dkt. 70-3.

Almost a year later, on November 27, 2019, Dunlap was pulled over for an unrelated traffic offense. *See* Am. Compl. ¶ 15. Dunlap was arrested at that traffic stop, allegedly on a warrant for criminal mischief that was issued as a result of the property damage and theft from her room at the Sleep Inn. *See id.* ¶¶ 15–25.

Dunlap subsequently filed suit, alleging that her constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution were violated, along with her rights under Kentucky common law for false arrest, false imprisonment, gross negligence, negligence, negligent supervision, negligent training, and intentional and/or negligent infliction of emotional distress. *See id.*

One of the defendants is Sleep Inn. *See id.* Sleep Inn seeks to exclude the testimony of Dunlap's expert witness, Fred Del Marva, alleging that Mr. Del Marva's opinions and reports are: (1) not helpful to the jury in determining the facts at issue and (2) not the result of reliable methodology. *See* Mot. to Exclude at 3.

## II.    DISCUSSION

Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

2

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), district courts must act as gatekeepers to ensure that expert testimony is both reliable and relevant. *See Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Although Rule 702 commonly applies to scientific expert testimony, "it applies equally to witnesses whose expertise stems from other types of specialized knowledge," which gives a district court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," provided, of course, "that the gatekeeping mandate of *Daubert* is followed." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

In the Sixth Circuit, there are three stages to a Rule 702 analysis. First, "the witness must be qualified by knowledge, skill, experience, training, or education." *Id.* (quotations and citations omitted). Second, "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Ibid.* Third, "the testimony must be reliable." *Ibid.* Both the second and third stages are at issue today.

### A. Relevance

Sleep Inn claims that Mr. Del Marva's testimony will not assist the jury. Here, Sleep Inn argues that Mr. Del Marva's opinions "impermissibly mirror the testimony offered by fact witnesses" and are "well within the average ken of the average juror." Mot. to Exclude 5–9 (quotations omitted). Dunlap disputes these points, stating that Mr. Del Marva will testify as to "his professional opinion regarding the impropriety of Defendant's practices and procedures," which "an average juror does not know or understand." Resp. at 7–8.

At its core, the question here is whether Mr. Del Marva is attempting to testify as an expert about a matter that jurors can understand and decide for themselves.  The parties primarily rely on three cases: *Youngberg v. McKeough*, 534 F. App'x 471 (6th Cir. 2013); *Van Blargan v. Williams Hosp. Corp.*, 754 F. Supp. 246 (D.P.R. 1991); and *Birge ex rel. Mickens v. Dollar Gen. Corp.*, No. 04-2531 B/P, 2006 WL 5175758 (W.D. Tenn. Sept. 28, 2006).

In *Youngberg*, a fourteen-year-old boy took his parents' wake boat out on a lake and collided with a personal watercraft.  *See* 534 F. App'x at 473.  One of the passengers on the personal watercraft sued the fourteen-year-old boy's parents on a theory of negligence.  *See id.*  The plaintiff attempted to introduce expert testimony that "would have pertained to whether the [parents] were negligent for letting [the fourteen-year-old boy] drive the boat."  *Id.* at 479.  That information was enough for the Sixth Circuit to exclude the expert testimony, because it would not be helpful to the jury.  *See id.*  That's because the expert was simply going to "give[] lay testimony interpreting the facts of the case" and "tell the jury what result to reach."  *Id.*

In *Van Blargan*, a hotel guest claimed that he was assaulted in the patio of the hotel where he was staying.  *See* 754 F. Supp. at 247.  That guest sued the operator and manager of the hotel for failing to provide adequate security.  *See id.*  The plaintiff attempted to introduce an alleged security expert, but the court found that the witness's education and experience did not qualify him as an expert.  *See id.* at 248.  The court also seemed concerned with the witness's ethics, suggesting that he was a "gun for hire."  *See id.* at 249.  However, even though the court concluded that the proposed witness was not an expert, it went on to note that "hotel security is not a subject which lends itself to expert testimony" because "it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life."  *See id.* at 249–50.

4

In *Birge*, a man was shot and killed in the parking lot of a Dollar General store. *See* 2006 WL 5175758 at *1. That man's son filed a complaint against Dollar General, alleging that it was negligent in failing to prevent his father's death at its premises. *See id.* The plaintiff retained a premises security expert who planned to testify at trial that, based on a prior pattern of crime at the store, this attack was foreseeable. *See id.* The court concluded that this testimony would not assist the trier of fact because "[t]he jury is capable of considering the prior history of crime and other incidents at Dollar General, and determining whether the attack was foreseeable and whether Dollar General breached a duty." *Id.* at *11.

Considering these cases, the Court believes that a jury can make a determination on the ultimate issues in this case without the assistance of Mr. Del Marva's testimony.

In his expert report, Mr. Del Marva states that it is his "opinion that the methodology, practices, procedures and protocols employed by the defendants," including Sleep Inn, "were not consistent with those that would have been employed by a reasonable, diligent and responsible lodging operator given the same totality of circumstances." Expert Report, Dkt. 66-1, at 7. Furthermore, Mr. Del Marva writes that he will testify at trial that "but for the aforementioned negligent conduct and the conscious, reckless disregard for the plaintiff's life and future, the injuries and mental anguish sustained by [plaintiff] would never have occurred." *Id.* In sum, Mr. Del Marva essentially plans to testify that Sleep Inn was negligent and that its negligence caused Dunlap's injuries. *See id.*

However, it does not appear that Mr. Del Marva will give testimony on technical issues, nor does Mr. Del Marva explain how his industry standards support his opinions. Rather, Mr. Del Marva appears to be relying on "matters that are . . . within the competence of jurors to understand and decide." *Youngberg*, 534 Fed. App'x at 479.

Much of Mr. Del Marva's proposed testimony "interpret[s] the facts of the case," which the Sixth Circuit has explained is not helpful expert testimony. *Id.* For example, Mr. Del Marva concludes: "Is it a possibility that someone entered the plaintiff's room after she checked out? Absolutely." Expert Report at 5. And: "Is there any evidence to substantiate that this laundry person did not pick up the linens from room 403 after the plaintiff checked out? No." *Id.* Mr. Del Marva also concludes, based on contradictory statements in the depositions of the Sleep Inn's owner and onsite manager, that "[m]aybe [the owner] should have paid more attention to his business." *Id.* at 6. Mr. Del Marva also believes that Sleep Inn might have violated its own internal policies. *Id.* at 5–6. But none of these findings require an expert to translate industry jargon or discuss how other hotels operate. A jury will be able to make a determination as to whether someone else entered Dunlap's room, whether a laundry person picked up the linens, and whether Sleep Inn violated its own policies. *See Youngberg*, 534 Fed. App'x at 479.

Similarly, Mr. Del Marva's hotel security testimony does not lend itself to expert testimony. *See Van Blargan*, 754 F. Supp. at 249–50. Mr. Del Marva will testify that "defendant ha[d] same day access to surveillance tapes and keypad information but failed to look at them," even though these tapes and information "would have or would not have substantiated [defendant's] allegation." Expert Report at 6. It does not take an expert to know that checking surveillance tapes and keypad information would help corroborate any accusations and speculations. That's not industry know-how—it's just common sense. *See Van Blargan*, 754 F. Supp. at 249. A jury is competent to handle this issue without the assistance of Mr. Del Marva's testimony. *See id.*

In like manner, Mr. Del Marva bases his conclusions on a prior history of crime at the Sleep Inn. *See Birge*, 2006 WL 5175758 at *11. Mr. Del Marva concludes that "defendant's

premises [were] known for public intoxication, possession of marijuana, theft, drug paraphernalia, possession of meth, assault, rape, burglary, criminal mischief, robbery, and attempted suicide." Expert Report at 4. Yet, Mr. Del Marva writes that Sleep Inn "did nothing to deter or prevent unauthorized persons and trespassers from using the premises." *Id.* The jury is capable of considering the extent to which this alleged criminal activity might have played a role in the damage to Dunlap's room. *See Birge*, 2006 WL 5175758 at *11 (collecting cases).

Stripped of these factual interpretations, common-sense deductions, and reliance on prior crimes, there's nothing left of Mr. Del Marva's conclusions that justifies or requires expert testimony.

The Court does note, however, that hotel security could sometimes be a suitable topic for expert testimony. *But see Van Blargan*, 754 F. Supp. at 249–50. For example, a case involving hotel security could require an expert to calculate the amount of damages. Here, Mr. Del Marva does critique Sleep Inn's damage calculation, but Mr. Del Marva never reveals his methodology, offers a contrary figure, or even suggests that he performed any analysis. *See* Expert Report at 5. Instead, Mr. Del Marva simply states that the actual cost for the damages to Dunlap's room "would be nowhere near" the amount calculated by Sleep Inn. *Id.* This conclusory statement is not enough.

The same goes for Mr. Del Marva's statement that Sleep Inn "fail[ed] to implement maintenance logs, maintenance inspection sheets, housekeeping inspection sheets, and housekeeping work sheets." *Id.* at 6. Importantly, Mr. Del Marva makes no mention of how the hotel industry usually handles its maintenance and housekeeping sheets. *See id.* While Mr. Del Marva may testify about the security standards peculiar to the hotel industry, he may not, in this

instance, testify about common-sense security standards that simply would have made it easier to identify when Dunlap's room was damaged.[1]

Accordingly, the Court excludes Mr. Del Marva's testimony because they would not help the jury.

### B. Reliability

Sleep Inn maintains that Mr. Del Marva's testimony is not reliable.  Here, Sleep Inn argues that Mr. Del Marva "has failed to establish that [his conclusions] are the product of a reliable methodology."  Mot. to Exclude at 3.  Dunlap responds, claiming that Sleep Inn's "argument is based on the *Daubert* factors," which "are not mandatory in every case."  Resp. at 7.  Dunlap also mentions that "Mr. Del Marva has a vast knowledge and experience in the hotel industry."  *Id.* at 6; *see also id.* at 5–6 (citing *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 322 (6th Cir. 2001)).  In its Reply, Sleep Inn does not dispute that experience alone may be sufficient to qualify someone as an expert.  *See* Reply at 2.  Instead, Sleep Inn maintains that Rule 702—not *Daubert*—requires such an expert to explain how his experiences reliably apply to the facts, something which Sleep Inn contends Mr. Del Marva has not done.  *See id.*

The parties' dispute begins with *Childress v. Kentucky Oaks Mall Co.*, No. 5:06CV-54-R, 2007 WL 2772299 (W.D. Ky. Sept. 20, 2007).  In *Childress*, this Court explained that the testimony of a premises security expert is not evaluated using the *Daubert* factors, because that

---

[1] Sleep Inn also argues that "[t]o the extent Dunlap's Response suggests that Mr. Del Marva will offer additional opinion regarding 'standards of the hotel industry' beyond what has been disclosed in his report," Dunlap should not be allowed to do so. Reply at 4. Here, Sleep Inn states that a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Id.* (quoting *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)).  However, the Court does not interpret Dunlap's Response as suggesting that Mr. Del Marva's testimony will contain additional information beyond what is already in his report.  *See* Resp.; *see also* Expert Report.  Dunlap states in the Response that Mr. Del Marva's "professional opinion" about "industry standards of care" "appear[s] in his report." Resp. at 8.  And nowhere in the Response does Dunlap provide any description of what additional information Mr. Del Marva might testify about.  *See id.*  As such, the Court does not address this argument.

testimony does not rely on any scientific method. *See id.* at \*3. *Childress* held that "[w]hen a witness relies primarily on his or her experience, the 'witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Id.* (quoting Fed. R. Evid. 702 Advisory Committee Notes). So even if an expert is preliminarily qualified, a court must still evaluate whether the expert offered a reliable basis for his opinions. *See id.*

Therefore, the question is whether Mr. Del Marva employed a reliable methodology and is offering reliable testimony. Three cases guide the Court's analysis here.

First, in *Childress*, this Court found that a proposed expert's testimony was reliable because he "undertook his examination of the case based on a methodology used for retrospectively assessing premises security litigation cases, which was developed by professionals in the security industry." *Id.* at \*4. Also critical to *Childress* was the fact that the proposed expert "ha[d] explained the means by which he reached his conclusions and provided a basis for his conclusions." *Id.*

Second, in *Bethea v. Bristol Lodge Corp.*, No. CIV.A. 01-612, 2003 WL 21146146 (E.D. Pa. May 19, 2003), the proffered expert reached his opinion by reviewing deposition testimony, reports of various witnesses, and photographs and diagrams of the scene. *See id.* at \*7. However, the court excluded the expert's testimony because he did not explain the means by which he reached his conclusions. *See id.* For example, the expert did not cite an industry standard, discuss was what custom in the industry, or provide "any explanation that could be tested or subject to peer review as to how" he reached his opinions. *Id.* at \*7.

Third, in *Starnes v. Sears Roebuck & Co.*, No. 01-2804 B AN, 2005 WL 3434637 (W.D. Tenn. Dec. 14, 2005), the proposed expert "visited the site of the incident and reviewed mall

incident reports, depositions, [the] daily activity safety report of the incident date, the security company's employee handbook," and the police department's "incident and crime analysis reports." *See id.* at *2.  Despite these preparations, the court determined that the expert "offer[ed] no basis, other than his experience, for his opinions," and as a result those opinions "[were] not reliable or relevant." *Id.* at *4.  The court, citing *Bethea*, demanded more in the form of reliable methodology or reliance on an industry standard. *See id.* at *5.

Mr. Del Marva is far more similar to the proposed experts in *Bethea* and *Starnes* than he is to the proposed expert in *Childress*.  Although Mr. Del Marva states that Sleep Inn's procedures "were not consistent with those that would have been employed by a reasonable . . . lodging operator," Mr. Del Marva never states what those reasonable procedures would be.  Expert Reports at 7.  Claiming that an industry standard exists is not the same as discussing that standard. *See Bethea*, 2003 WL 21146146, at *7.  What's more, Mr. Del Marva does not provide any explanation as to how he reached his opinions. *See id.*  Rather, Mr. Del Marva asks the Court to accept his opinions based on his experience, which is something that the Court cannot do. *See Starnes*, 2005 WL 3434637, at *4.  Indeed, "the *ipse dixit* of the expert alone is not sufficient to permit the admission of an opinion. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (quotations and citation omitted).

Therefore, the Court finds that Mr. Del Marva's proposed testimony is unreliable because, unlike the expert witness in *Childress*, Mr. Del Marva did not employ a reliable methodology based on articulated industry standards. *See Childress*, 2007 WL 2772299, at *4.

### III.     CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Sleep Inn's

Mot. to Exclude, Dkt. 70, is **GRANTED**.

**IT IS SO ORDERED**

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 28, 2021